United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br>MONICA CROSS,<br>　　　　　　　　　Debtor.<br><br>MONICA CROSS,<br>　　　　　　　　　Plaintiff<br>　　v.<br>CITY OF CHICAGO and CARMAX BUSINESS SOLUTIONS<br>　　　　　　　　　Defendants. | Chapter 13<br>Bankruptcy No. 18 BK 00986<br>Honorable Judge Jack B. Schmetterer<br><br>Adversary No. 18 AP 00154 |

### AMENDED OPINION ON (A) DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [DKT. NO. 6] AND (B) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [DKT NO. 4]

Defendant the City of Chicago ("the City") has moved to dismiss the adversary complaint brought against it by Debtor Monica Cross ("Debtor") pursuant to Fed. R. Civ. P. 12(b)(6) (made applicable here by Fed. R. Bankr. P. 7012). The City challenges the legal sufficiency of Plaintiffs' allegations, arguing that because it has a valid possessory lien pursuant to Illinois law, its actions are excepted from the automatic stay pursuant to 11 U.S.C.§ 362(b)(3) and (b)(4). Debtor disputes the validity of the City's possessory lien and asserts that it is not properly exercising its police powers by retaining possession of the vehicle.

In addition, Debtor has filed a Motion for Preliminary Injunction seeking to mandatorily enjoin the City into turning over the vehicle because she faces irreparable harm by not being able to work if she is not allowed to use the car. The City contends that Debtor has not met any of the standards set forth by the Seventh Circuit for the imposition of a preliminary injunction.

These matters, based upon the same set of facts and similar legal arguments, will be considered together. For the reasons discussed below, the City's Motion to Dismiss is denied by separate order entered this date. Additionally, Debtor's Motion for Preliminary Injunction is granted by separate order entered this date.

### INTRODUCTION

The Seventh Circuit opinion in *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir. 2009) placed the burden squarely upon creditors to initiate a showing as to why they should be allowed to retain vehicles of bankruptcy debtors that were seized prepetition.

1

Unless such showing is initiated, creditors must surrender the vehicle because of the automatic stay.

The City of Chicago has completely disregarded this obligation, choosing instead to continue holding vehicles of debtors postpetition and waiting many months until proceedings are brought by debtors against them in bankruptcy and then asserting a response that its purported possessory lien grants it an exception to the automatic stay. The City has taken this tactical delay position to coerce debtors to pay traffic fines quickly and fully in their bankruptcy plan and also to avoid paying filing fees required for the filing of motions for relief from the automatic stay. In this way, the City is circumventing entirely the procedural burden imposed on it by *Thompson* and the protections provided to debtors by the automatic stay. The City must comply with the requirements of *Thompson* so that debtors may, unless some cause is shown, recover their vehicles in bankruptcy, allowing them to continue working and making payments under their Chapter 13 plans.

## BACKGROUND FACTS ALLEGED

The Debtor filed her underlying petition for Chapter 13 bankruptcy relief on January 12, 2018. Debtor's vehicle, a 2009 Cadillac SRX, was purchased from CarMax, and CarMax has a purchase money secured interest in the vehicle for $27,340.88. CarMax has valued the vehicle at $9,425.00. Debtor asserts that the vehicle is worth only $6,000.00 and that she has claimed a $2,400.00 exemption in the vehicle. Prior to the Debtor's filing of this bankruptcy case on January 12, 2018, the City seized the Debtor's vehicle in December 2017 or January 2018. The Debtor has incurred 38 total tickets, 7 of which she has paid, and one of which was dismissed. The 30 other tickets remain outstanding. The City initially filed a secured claim, Claim No. 3, in the amount of $5,099.90, but that claim has since been amended to $4,459.90. Debtor has requested that the City turnover her vehicle, but on April 17, 2018, the City informed Debtor that it would not do so unless the Debtor paid the entire secured claim in full, in regular monthly payments over the course of her Chapter 13 plan. The City would only agree to those terms and stated that upon confirmation of such a plan, the vehicle would be released to Debtor.

Debtor filed her instant adversary complaint against the City and CarMax on May 1, 2018. Debtor pleads two Counts against the City. In Count I, Debtor alleges that the City's lien is inferior to CarMax's purchase money interest, and thus, the City has no secured interest in the vehicle. Under Count I, Debtor seeks relief in the form of an order finding that CarMax is the

2

superior lienholder, requiring the City to turnover the vehicle pursuant to 11 U.S.C. § 542, and finding that the City has violated its duty to turn over property of the estate pursuant to that same statute. In Count II, Debtor alleges that the City has violated the automatic stay by continuing to hold her vehicle, and that her plan provides for monthly payments based on the value of the vehicle to the superior lienholder, CarMax. Under Count II, Debtor seeks relief in form of damages from the City for any duration of time during which it has impermissibly held her vehicle, as well as attorney's fees and costs.

The City filed its Motion to Dismiss on May 4, 2018. City argues that pursuant to Illinois law, it has a statutory, superpriority possessory lien for towing and storage fees that supersedes CarMax's purchase money interest in the vehicle. As a matter of law, the City argues, that possessory lien entitles it to retain Debtor's vehicle. The City also asserts that Debtor cannot seek turnover pursuant to 11 U.S.C. § 542 because it cannot be used to alter or avoid substantive lien rights and it is merely an enabling statute. Moreover, the City argues that turnover pursuant to § 542 requires that the Debtor have a substantive right to possession on the petition date, which the City argues Debtor did not have as the car was seized pursuant to an exercise of the City's police powers. Additionally, the City argues that 11 U.S.C. § 362(a) does not require turnover because the City's actions are excepted from the automatic stay pursuant to 11 U.S.C. 362(b)(3) and 362(b)(4).

Debtor filed her Response on May 15, 2018. She argues that she has adequately plead facts to sustain her complaint and that each of the facts plead by her supports her allegations against the City. Debtor also argues that as a matter of law it is the City who does not have any right to her vehicle as it does not have a valid lien pursuant to Judge Cox's opinion *In re Howard*, No. BR 17-25141, 2018 WL 1905587 (Bankr. N.D. Ill. Apr. 19, 2018). Debtor also asserts that whether the City has a superpriroity lien or not is irrelevant, as a Seventh Circuit panel held in *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 708 (7th Cir. 2009) that creditors are unequivocally required to turnover vehicles to debtors pursuant to 11 U.S.C. § 542. Moreover, the Debtor states that she had an interest in the vehicle that required turnover upon her request. Finally, Debtor asserts that the City is not excepted from the automatic stay pursuant to either 11 U.S.C. § 362(b)(3) or § 362(b)(4) because it neither has a valid possessory lien on the vehicle, nor has it demonstrated that its purpose for immobilizing

3

Debtor's vehicle is non-pecuniary in nature and that Debtor is the type of driver that should be kept off the roads for the sake of public safety.

Additionally, Debtor filed a Motion for Preliminary Injunction on May 3, 2018, seeking to mandatorily enjoin the City into returning her vehicle. Debtor states that she requires the vehicle as she is a substitute teacher who must travel to different schools in order to perform her duties. She argues that pursuant to *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 707-08 (7th Cir. 2009), the City is required to turnover the automobile under 11 U.S.C. § 542. She also states that she is likely to succeed in the adversary proceeding.

The City filed its Response to Debtor's Motion for Preliminary Injunction on May 15, 2018. It argues that pursuant to Illinois law, the Debtor has not met the standards as to any element required for a preliminary injunction. Those elements are, (1) whether the movant will suffer irreparable harm prior to a final resolution, (2) whether there is an adequate remedy at law, (3) whether the movant has a reasonable likelihood of success on the merits. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The court is then asked to (4) weigh the irreparable harm facing movant against the irreparable harm that may be inflicted upon the non-moving party, and (5) the effects, if any, the grant or denial of such a preliminary injunction would have against third parties. *Id.* The City argues that no irreparable harm will occur to Debtor if she does not have her vehicle, and that Debtor has an adequate remedy at law should any harm occur at all, in the form of monetary damages. The City also asserts that, based upon its possessory lien and the stay exception of 11 U.S.C. § 362(b)(3) that allows a creditor to take any action to maintain perfection of its liens, the Debtor is unlikely to prevail in the underlying adversary proceeding. The City also asserts that it faces great harm if it is forced to give up the vehicle, specifically if Debtor chooses to dismiss the adversary proceeding and simply walk away with the vehicle without providing a replacement lien. The City does not articulate what type of replacement lien could be given, though it asserts that no such replacement lien will adequately protect its interest in the way that a possessory lien does. Finally, the City asserts that public interest favors the City because the entire objective of impounding and retaining vehicles of debtors is to deter bad driving behavior.

4

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding was thereby referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(E).

### A. THE CITY'S MOTION TO DISMISS [DKT. NO. 6]

Defendant's motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. *See* Fed. R. Bankr. P. 7012(b) (incorporating Fed. R. Civ. P. 12(b)(6)); *Hallihan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) (made applicable by Fed. R. Bankr. P. 7008), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The City does not directly attack the factual sufficiency of Debtor's complaint. Rather, the City argues that both Counts of Debtor's complaint must fail as a matter of law. Thus, while the City is correct that if a complaint, "raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate," the law on both Counts of the complaint favors Debtor's position and the complaint should not be dismissed. *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).

### I. The City's Actions are Not Excepted from the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(3)

The City argues that it is not required to pay damages to the Debtor because, pursuant to 11 U.S.C. § 362(b)(3), its prepetition seizure and postpetition retention of Debtor's vehicle is excepted from the automatic stay. The City is clearly incorrect that its actions are excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(3) both because the mere "act" of retaining

5

possession of the vehicle in order to maintain perfection of its purported possessory lien is not excepted from the stay pursuant to that provision of the bankruptcy code and because it does not have a valid possessory lien pursuant to Illinois law.

In *Thompson*, the Seventh Circuit held that creditors who exercised control over vehicles belonging to debtors by repossessing them prebankruptcy would have to turn over those vehicles upon the request of a debtor once a bankruptcy has been filed. 566 F.3d at 701. In that case, the secured creditor (the seller of the vehicle in question) refused to relinquish possession of the vehicle because it felt that the debtor could not adequately protect its interests as required by the Bankruptcy Code. *Id.* at 700. The secured creditor had repossessed debtor's vehicle prepetition. *Id* at 701. The opinion held that the act of the creditor, "of passively holding onto an asset constitutes 'exercising control' over it, and such action violates section 362(a)(3) of the Bankruptcy Code." *Id*. at 703. As a result, the opinion determined that, "[t]he right of possession is incident to the automatic stay. A subjectively perceived lack of adequate protection is not an exception to the stay provision and does not defeat this right." *Id.* at 704. As a result, the holding was that, "upon the request of a debtor that has filed for of bankruptcy, a creditor must first return an asset in which the debtor has an interest to his bankruptcy estate and then, if necessary, seek adequate protection of its interests in the bankruptcy court. *Id.* at 708. In effect, the Circuit applied the automatic stay to the prebankruptcy repossession of the debtor's vehicle.

The *Thompson* opinion imposed a clear procedural burden upon creditors. A creditor who has repossessed the vehicle of a debtor prepetition is obligated to return that vehicle to the debtor once debtor has made such a request during the bankruptcy proceeding. A creditor may then seek adequate protection from the debtor. Alternatively, a creditor may file an emergency motion for relief from the automatic stay and attempt to initiate a showing as to why they should be allowed to retain vehicles of bankruptcy debtors that were seized prepetition.

Since the bankruptcy was filed in January, the City has not returned the Debtor's vehicle or filed any motion attempting to show that it should be allowed to retain Debtor's vehicle in direct contravention of *Thompson*. It is ignoring its procedural burden to either return the vehicle or make a showing as to why it should be allowed to retain the vehicle, and thus violating the automatic stay. The City is instead choosing to wait until debtors in bankruptcy challenge their possession of the vehicle to assert that their possessory lien is excepted from the automatic stay. However, the Seventh Circuit panel in *Thompson* made it clear that a creditor was to turnover

6

possession of the vehicle upon the request of the debtor or immediately to file a defense like the one the City is arguing. The *Thompson* opinion does not allow the City to delay the return of the vehicle without the filing of a motion, nor does it allow the City to rest on its heels and wait for a debtor to initiate an action against it and only then assert its defenses. Even if a higher court were to rule that the City's possessory lien is a valid exception to the automatic stay, debtors may still offer alternative, substantive liens in their plans that could protect the City's right to payment and allow for the return of the vehicle. The City thus far has denied debtors the right to contest the City's defenses or offer alternative liens by retaining possession of the vehicles without initiating any procedure allowing it do so. It is abundantly clear that the City is ignoring the procedural requirements of *Thompson* and making life unnecessarily difficult for debtors who need their vehicles in order to get to work, earn money, and make payments on their Chapter 13 plans.

First, 11 U.S.C. § 362(b)(3)'s exception to the stay applies only to "acts" taken by creditors to maintain their perfection. Passive possession of a debtor's property for the purposes of maintaining possession does not constitute an "act," and courts that have held otherwise are reading that provision to include both "acts *or omissions*," which is not what the statute says. Moreover, requiring that the City immediately turnover the vehicle upon Debtor's request or file an emergency motion for relief from stay in order to determine if it can be adequately protected, either by retaining the vehicle or by being granted some other replacement liens, is an alteration of only the City's procedural rights, not its substantive rights, contrary to its arguments otherwise.

The City asserts that that interpretation of § 362(b)(3)'s "act" language runs contrary to the interpretation of "act" in the Seventh Circuit's *Thompson* opinion. It argues that because the Seventh Circuit held that mere possession of a Debtor's vehicle violated the automatic stay pursuant to 11 U.S.C. § 362(a)(3), mere possession of the vehicle must be enough to satisfy the requirements of maintaining perfection pursuant to 11 U.S.C. § 362(b)(3). *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 703 (7th Cir. 2009). The City argues that the meaning of "any act" between these two provisions cannot be any different. However, the City ignores the unique purposes behind each of these provisions. The purpose of 11 U.S.C. § 362(a)(3) is to prevent creditors from performing, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Thus, the objective is clearly to ensure that property in which the debtor has an interest remains within

7

Case 18-00154 Doc 34 Filed 05/31/18 Entered 05/31/18 14:34:58 Desc Main Document Page 8 of 16

the estate. Conversely, 11 U.S.C. § 362(b)(3) clearly protects creditors, but only in circumstances where they already have a valid, perfected interest in the property and have performed some action in order to maintain that perfection. It is quite clear that the scope of § 362(b)(3) is narrow compared to the scope of § 362(a)(3). A narrower application of the phrase "any act," is thus warranted.

The City also argues that it must retain possession of the vehicle in order to maintain perfection of its possessory lien, and that no other lien would sufficiently protect its interests. The *Kennedy* opinion noted that the Supreme Court, in *Whiting Pools* explained that, "Congress contemplated this situation and decided that other provisions of the code would adequately protect, and therefore ***should replace***, a creditor's possessory interests." No. 17 CV 5945, 2018 WL 2087453 (Bankr. N.D. Ill. May 4, 2018) (emphasis added) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983)). Were the Debtor in this case to offer a replacement lien in her plan that ensured the City would be paid the amount it is owed, the City would be adequately protected, and such a result would comport with the Supreme Court's holding in *Whiting Pools*. 462 U.S. 198, 207 (1983). The City's bald assertion that no replacement lien will adequately protect its interest in the way that possession of the vehicle does is not supportable.

In addition to the above described challenges to the City's assertion that its post-petition possession of debtors vehicles is excepted from the stay pursuant to 11 U.S.C. § 362(b)(3), one bankruptcy court has since raised the issue of whether Municipal Code § 9-92-080(f) actually does grant the City of Chicago a valid possessory lien under Illinois state law.

Judge Cox's recent opinion, *In re Howard*, provides instructive analysis of the issue. No. BR 17-25141, 2018 WL 1905587 (Bankr. N.D. Ill. Apr. 19, 2018). In *Howard*, the Court examined when Illinois courts have recognized common-law possessory liens. *Id*. Pursuant to 810 ILCS 5/9-333, which states that possessory liens in Illinois are secured by, "payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business," *Howard* concluded that the City did not have a statutory right to a possessory lien. *Id*. As the City had not furnished any goods or services to the debtor in that case, the *Howard* opinion concluded that the City did not have a valid possessory lien pursuant to Illinois law. *Id.* Moreover, the *Howard* opinion stated that while the Illinois Constitution does allow for concurrent exercise of power between the State of Illinois and home rule units within it, such as the City of Chicago, Illinois courts have held that where

8

the General Assembly or Illinois Constitution have limited their power to govern, home rule units cannot expand their authority unilaterally by attempting to grant themselves a possessory lien that the state law expressly limited in scope. *Id.* (citing *City of Wheaton v. Loerop*, 399 Ill. App. 3d 433, 434 (2010)). Those courts required municipalities to show (1) that the exercise of power pertained to its government and affairs, (2) that whether the legislature had specifically limited the local exercise of power on an issue or whether the State's exercise was exclusive, preempting the exercise of power by home rule units and (3) that if no specific action had been taken, a court must "determine the proper relationship between the local ordinance and state law." *Id.* (citing *City of Oakbrook Terrace v. Suburban Bank and Trust Co.*, 364 Ill. App. 3d 506, 514 (2006).

The *Howard* opinion also analogized the City's enactment of Municipal Code § 9-92-080(f) to several Illinois Supreme Court cases wherein the Illinois Supreme Court held that some functions of home rule units do not pertain to a unit's government and affairs, and are thus not appropriate for municipal legislation. *Id.* ("Those cases invalidated ordinances on the basis of statewide, rather than local interest in the subject matter of the ordinance.").

Judge Cox held that, "[n]either the City's legislative enactment nor its pleadings," addressed the, "three statutory elements needed to support its position that it has a possessory lien in impounded vehicles," indicating that the, "creation and imposition of liens is a matter of statewide concern," not one pertaining to local units of government. *Id.* Thus, the opinion concluded that because the City of Chicago had not demonstrated that it had any possessory lien pursuant to Illinois law, the exception to the stay allowing creditors to take any act to perfect their liens, 11 U.S.C. § 362(b)(3), did not apply to the City's seizure and impoundment of the debtor's vehicle. *Id.*

While the City has appealed the *Howard* decision, and that appeal remains pending, its analysis is persuasive. The City has not shown that, pursuant to Illinois law, it has any possessory lien whatsoever, and thus, 11 U.S.C. § 362(b)(3) does not except its actions from the automatic stay. Moreover, even if the City could demonstrate that it has a valid possessory lien under Illinois law, the *Thompson* decision clearly requires secured creditors either to turnover the property to the estate of the debtor and then seek adequate protection (for instance, a replacement lien offered in a plan) or to file an emergency motion for relief from stay. *Thompson v. Gen. Motors Acceptance Corp.*, LLC, 566 F.3d 699, 707 (7th Cir. 2009). The City may become a

secured creditor as a result of some replacement lien needed to protect its interest adequately once it has relinquished control of the Debtor's vehicle as it is required to do pursuant to the decision in *Thompson*.

The City also argues that pursuant to 625 ILCS 5/11-208.3, it has been provided by the State of Illinois with a mechanism to immobilize and enforce traffic regulations. While that statute does empower municipalities to establish, "a program of vehicle immobilization for the purpose of facilitating enforcement of," regulations regarding, "vehicular standing, parking, compliance, automated speed enforcement system, or automated traffic law regulations," nothing in that statute explicitly allows the City to enact an ordinance granting it the right to a possessory lien that contravenes the holding under U.S. Bankruptcy law in *Thompson* requiring that upon the request of a debtor, a creditor must turn the vehicle over. 625 ILCS 5/11-208.3(c). The City is correct that the Illinois Constitution grants it broad power to enact ordinances as a home rule unit, and that such power is to be construed liberally. ILL. CONST. 1970, art. VII, § 6(a); *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 988 N.E.2d 75, 81 (Ill. 2013). However, the City is asking for an interpretation of 625 ILCS 5/11-208.3 that creates a right to impose possessory liens with priority over all other creditors in bankruptcy and a right to retain possession over vehicles belonging to the estates of debtors where no such right currently exists. What the City is attempting to do is use this state statute as a means to circumvent U.S. Bankruptcy law and the rights of debtors therein to drive their cars to work in order to keep their jobs.

## II. Debtor Has an Equitable Interest in the Vehicle and the City is Required to Turnover Debtor's Vehicle Pursuant to 11 U.S.C. § 542

The City also argues both that the Debtor does not have an interest in the vehicle requiring turnover and that even if that were the case, 11 U.S.C. § 542 is merely an enabling statute that does not allow the alteration of its substantive, possessory lien rights, and thus, is not an avenue for Debtor to seek turnover of the vehicle.

The City is clearly incorrect that Debtor does not have an interest in the vehicle pursuant to 11 U.S.C. § 542. First, Debtor is the owner of the vehicle, as she has stated in her Complaint and that alone establishes an interest in the vehicle. Moreover, the Debtor has an interest the moment she requests turnover of the vehicle from a creditor during the pendency of her bankruptcy. *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 701-02 (7th Cir. 2009); *City of Chicago v. Kennedy*, No. 17 CV 5945, 2018 WL 2087453, at *4 (N.D. Ill. May 4,

2018) ("Although he did not possess his car when he filed bankruptcy, Kennedy had an interest in his car at the time of filing – it remained his car. Although his immediate possession was subject to contingencies imposed by his traffic violations, allowing the bankruptcy estate to take possession would not expand Kennedy's property rights.").

The City's contention that 11 U.S.C. § 542 unequivocally bars a court's ability to affect the substantive lien rights of a creditor is also incorrect. While the Supreme Court in *Whiting Pools* indicated that turnover pursuant to 11 U.S.C. § 542 cannot modify a creditor's substantive rights, courts have held that to mean that the City may be granted some kind of replacement lien that protects its rights to payment. *City of Chicago v. Kennedy*, No. 17 CV 5945, 2018 WL 2087453, at *4 (Bankr. N.D. Ill. May 4, 2018) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983)). The City has not shown that only possession will suffice to protect its right to collect payment of fines. *Id*. The City undoubtedly has authority to impound and hold a debtor's vehicle when they have committed violations and refused to pay their tickets. But, once that debtor enters bankruptcy, the City is bound by the ruling in *Thompson* to return the vehicle or seek protection by a motion. Such is the law in this circuit. As the Opinion noted in *Thompson*, other remedies are available to the City if it will not be adequately protected should it have to give up their asserted right to a possessory lien in return for a different lien, but it must seek those remedies in bankruptcy. 566 F.3d at 704. That the City has not chosen to seek an alternative lien or some other means of adequate protection does not absolve them of their duty to turnover the Debtor's vehicle pursuant to *Thompson*.

### III. The City's Actions are Not Excepted from the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(4)

The City is also incorrect that its retention of Debtor's vehicle is inarguably excepted from the automatic stay pursuant to the police powers exception of 11 U.S.C. § 362(b)(4). To determine whether a governmental action falls within the safe harbor of § 362(b)(4), courts have employed two similar, but overlapping tests which inquire as to the true purpose of the government action: the "pecuniary purpose" test and the "public policy" test. *In re Sori*, 513 B.R. 728, 734 (Bankr. N.D. Ill. 2014). The tests have been defined as follows:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety [or public policy]. Those proceedings which relate primarily to matters of public safety

11

are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate public policy are excepted from the stay.

*Solis v. Caro*, No. 11 C 6884, 2012 WL 1230824, at *3 (N.D. Ill. Apr. 12, 2012) (citing *Chao v. BDK Indus., L.L.C.*, 296 B.R. 165, 167-68 (C.D. Ill. 2003)). "These inquiries contemplate that the bankruptcy court, after assessing the totality of the circumstances, determine whether the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare, or represents a governmental attempt to recover from property of the debtor estate, whether on its own claim, or on the nongovernmental debts of private parties." *In re McMullen*, 386 F.3d 320, 325 (1st Cir. 2004).

The City has not shown, at this stage of the litigation, that the facts support its assertion that it incontrovertibly satisfies both the pecuniary purpose and public safety tests. As Debtor has pointed out, the City relies in part on *People v. Jaurdon*, 718 N.E.2d 647, 663 (1999), which states that the City's purpose for immobilizing and impounding vehicles is to "ensure payment of the civil fine. . .The impounded vehicle serves as collateral to ensure the City's receipt of the fine." That assertion by the City seems to indicate that its immobilization and impoundment program has more to do with its pecuniary interest than it does any concern over the welfare of the public. Thus, the City has not demonstrated that it unequivocally passes the pecuniary interest test.

Additionally, the City has not demonstrated that it passes the public policy test with regards to this Debtor. While the Debtor does have approximately 30 outstanding tickets, the City has not shown grounds for these tickets or that the Debtor is a dangerous driver. In *In re Hicks*, 582 B.R. 6, 9 (Bankr. N.D. Ill. 2018), the Debtor clearly had a pattern of dangerous driving, with 9 red-light violations, 6 speeding tickets and numerous parking tickets. While no one category of violation was dispositive, the opinion held that as to that particular debtor, the City had made a showing that Debtor was a reckless driver of the kind that the City's immobilization and impoundment program was meant to keep off the roads. *Id.* In this case, the City has not made such a showing. While the number of violations Debtor has incurred is substantial, there was no evidence offered of the types of violations committed. Instead, the 30 tickets are merely described as "vehicle related violations." But, clearly running a red light is much different than parking illegally. Without evidence of what type of tickets the Debtor has

incurred, it is impossible to determine whether the City is properly effectuating public policy as to this Debtor.

### B. DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). A court must engage in a two-step analysis to determine whether an injunction is warranted. *Id.*

First, the movant must show that, "(1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Id.* at 662. Second, the court must determine, "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the "public interest")". *Id.*

Debtor has satisfied the requirements of the first step of the Seventh Circuit's two-part test. Debtor has stated that she is a substitute teacher and that without her vehicle she cannot take assignments at various schools around the area. Public transportation will not suffice because Debtor cannot always anticipate when and where she will be called into work. Moreover, even if Debtor can get to work consistently by way of public transportation, she must also ensure that her children arrive at school each day. Without the vehicle, Debtor will not be able to work and will not be able to afford the necessary Chapter 13 plan payments to continue with her bankruptcy. This is irreparable harm.

Second, the Debtor does not have an adequate remedy at law. While the City is correct that both 11 U.S.C. § 362(k) and 11 U.S.C. § 542 contemplate that a debtor may seek monetary damages, Debtor will only receive that money after a judgment has been rendered. Receiving money after extensive litigation does nothing to alleviate Debtor's current issue, which is that she cannot get to work or drop her children off to school without the car. If she is not able to take up substitute teaching assignments, then she cannot make payments on her plan to the Chapter 13 Trustee. A future judgment is not an adequate remedy at this moment. Moreover, the City is under the mistaken impression that 11 U.S.C. § 362(k) and 11 U.S.C. § 542(a) state that money

damages are the exclusive remedy for violations of the bankruptcy stay and refusal to turnover property of the estate. The language of those statutes does not support that conclusion.

Third, Debtor has shown that she has a reasonable likelihood of success on the merits. The Opinion in *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 707-08 (7th Cir. 2009), unequivocally requires creditors to return vehicles to debtors upon their request. While the City argues strenuously that its possessory lien requires it to maintain possession of the vehicle in order to remain perfected, it is doubtful whether such passive possession of the vehicle satisfies the requirements of the stay exception of 11 U.S.C. § 362(b)(3), as discussed above. Moreover, while the City argues that it could be granted no lien to adequately protect it from the loss of its possessory lien, that too is a weak assumption given that the City's only goal is to receive full payment of the civil fines it has levied against Debtor, and that it does not necessarily need possession of the vehicle in order to achieve this through the Debtor's plan. *See In re Kennedy*, No. 17 CV 5945, 2018 WL 2087453 (Bankr. N.D. Ill. May 4, 2018) (noting that the Supreme Court, in *Whiting Pools* explained that, "Congress contemplated this situation and decided that other provisions of the code would adequately protect, and therefore ***should replace***, a creditor's possessory interests.") (emphasis added) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983)).

Finally, Debtor also relies upon Judge Cox's recent decision *In re Howard*, No. BR 17-25141, 2018 WL 1905587, at *3-4 (Bankr. N.D. Ill. Apr. 19, 2018) which held that, "[n]either the City's legislative enactment nor its pleadings," addressed the, "three statutory elements needed to support its position that it has a possessory lien in impounded vehicles" and thus, the City does not have a proper possessory lien under Illinois law. The Debtor has case law to support her position and has a reasonable chance of succeeding on the merits.

Having satisfied the first part of the two-step analysis, the possibility of harm to the Debtor must be weighed against the possibility of harm to the City. Again, this factor must now be weighed heavily in favor of the Debtor. The City argues that it will be irreparably harmed if it is required to give up possession of the vehicle because that would spell the end of its possessory lien. But, as discussed above, "Congress contemplated this situation and decided that other provisions of the code would adequately protect, and therefore ***should replace***, a creditor's possessory interests." *In re Kennedy*, No. 17 CV 5945, 2018 WL 2087453 (Bankr. N.D. Ill. May 4, 2018) (emphasis added) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207

(1983)). The City's contention that Debtor is likely simply to dismiss her bankruptcy case and abscond with the vehicle is unsupported. Debtor is a substitute teacher. Her entirely livelihood depends upon having her vehicle to travel to substitute teaching assignments. Given the varying dates, times and locations that Debtor is asked to work, public transportation is not a particularly feasible option. Furthermore, in addition to her sporadic work schedule, Debtor must also drop her children off to school each day and do so prior to any work assignment she has that day. Clearly, if the injunction is not granted, Debtor is more likely to suffer irreparable harm than the City.

Finally, the City asserts that it is in the best interests of the public to prevent Debtor from driving her vehicle in order to deter bad driving behavior arguing that there is great injury if, "enforcement is impossible [because] vehicle owners can repeatedly ignore with impunity the sanctions imposed for violation of the ordinances." *Grant v. City of Chicago*, 594 F. Supp. 1441, 1447 (N.D. Ill. 1984). While the Debtor has accumulated 30 outstanding tickets, there has been no showing yet that the type of bad behavior the City believes is paramount to the safety and convenience of the public was engaged in by the Debtor. Qualitatively, there is a difference between illegally parking and running red lights, and while both result in civil fines, the type of driver who routinely puts the lives of others in danger is more of a public menace than the one who double parks. Evidence as to the nature of Debtor's particular violations is not offered. Public policy generally favors keeping dangerous ordinance violators off the road, but the application of that public policy to this particular Debtor is not shown.

Overall, however, it is clear that 4 of the 5 factors articulated by the Seventh Circuit weigh heavily in favor of the Debtor. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). A preliminary injunction requiring the City to turnover Debtor's vehicle is warranted by the circumstances in this case.

## CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss will be denied by separate order to be entered concurrently herewith. Additionally, Debtor's Motion for Preliminary Injunction will be granted and a mandatory injunction will be created requiring the City to return Debtor's vehicle to her. For each day or partial day it refuses to comply with such order, it will be sanctioned $100.00 so that the Debtor may obtain other transportation.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 21st day of May, 2018

MAY 31 2018